IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: )<br>)<br>UAL CORPORATION, et al., )<br>)<br>    Reorganized Debtors. )<br>)<br>——————————————————— )<br>)<br>UNITED AIR LINES, INC., )<br>)<br>    Appellant/Appellee, )<br>)<br>v. )<br>)<br>AIR LINE PILOTS ASSOCIATION )<br>INTERNATIONAL, UNITED RETIRED )<br>PILOTS BENEFIT PROTECTION )<br>ASSOCIATION, ROGER D. HALL, )<br>DENNIS D. DILLON, GERALD TERSTIEGE, )<br>EUGENE M. CUMMINGS, )<br>RAYMOND P. FINK, JAMES M. KRASNO, )<br>and WILLIAM L. RUTHERFORD, )<br>)<br>    Appellees/Appellants. )<br>) | Case Nos. 06 C 2171<br>06 C 2172 (consolidated)<br>06 C 2173 (consolidated)<br><br>Honorable John W. Darrah |



## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the appeals of the Bankruptcy Court's March 21, 2006 Order. For the reasons that follow, the March 21, 2006 Order of the Bankruptcy Court is affirmed.

## BACKGROUND

United Air Lines, Inc. provides its employees pension benefits under defined benefit pension plans. One of these defined plans is the United Air Lines Pilot Defined Benefit Pension Plan ("the Pilot Plan"). United is the plan sponsor and administrator. The Air Line Pilots Association ("ALPA") is the union that represents United's active pilots. The United Retired Pilots Benefit

Protection Association ("URPBPA") is an Illinois non-profit corporation which was formed by a group of retired United pilots to protect the retirement benefits of pilot retirees, survivors, and dependants. Roger Hall, Dennis D. Dillon, Gerald Terstiege, Eugene M. Cummings, Raymond P. Fink, James M. Krasno, and William L. Rutherford are retired United Captains who serve on URPBPA's Board of Directors.

A group of United's retired pilots historically were entitled to receive pension benefits under the Pilot Plan that exceeded federal limits for qualified, tax advantaged plans. In 1991, United and the ALPA agreed that United would separately pay "non-qualified" benefits to pilots that could not be paid as qualified benefits due to the federal limits. United agreed to pay eligible pilots the difference between the contractually agreed defined benefits under the Pilot Plan and the maximum amount of defined benefits that could be legally paid from the Pilot Plan as a result of federal limits in the Internal Revenue Code. Unlike the qualified benefits which were funded and paid from the Pilot Plan trust, the non-qualified benefits were paid directly from United's general corporate assets every month.

On December 9, 2002, United filed a voluntary petition under Chapter 11 of Title 11, United States Code. Subsequently, United determined that in order to complete its reorganization and obtain the needed exit financing, it needed to terminate all four of its defined benefit pension plans. To achieve this result, United needed to modify each of its collective bargaining agreements, including the CBA with the ALPA ("the ALPA CBA"). United and the ALPA reached a tentative agreement to modify the ALPA CBA; and on December 16, 2004, United filed a motion to approve that agreement. On January 27, 2005, the Bankruptcy Court declined to approve the agreement due to some of the possible impact on some of the agreement's provisions.

The Pension Benefit Guaranty Corporation ("PBGC") is a wholly-owned United States government corporation established under 29 U.S.C. § 1302(a) to administer the pension plan termination insurance program established by Title IV of the Employee Retirement Income Security Act ("ERISA"). On December 30, 2004, the PBGC filed a Complaint in the United States District Court for the Northern District of Illinois, seeking an involuntary ERISA Section 4042 termination action against United as plan administrator of the Pilot Plan. PBGC's Complaint, Civil Case No. 04 C 8338, was assigned to Judge Joan Lefkow. Subsequently, Judge Lefkow referred the matter to the Bankruptcy Court.

Notwithstanding the PBGC's action, United and the ALPA negotiated a new tentative agreement to modify the ALPA CBA. On January 19, 2005, United filed a motion seeking appeal of the new agreement between United and the ALPA to modify the ALPA CBA ("the ALPA Agreement"). On January 31, 2005, the Bankruptcy Court approved the ALPA Agreement.[1]

The ALPA Agreement provided that the Pilot Plan would remain "in full force and effect" until the Bankruptcy Court issued an order making factual findings that the Plan should be terminated in the context of an ERISA Section 4041 termination proceeding and one of three things occurred: (1) no timely notice of appeal had been filed; (2) if appealed, the order had been affirmed following exhaustion of all appeals; or (3) United exited from bankruptcy and United's plan of reorganization ("POR") did not provide for the continuation of any such appeal. Paragraph 13 of the ALPA Agreement required United to assume the ALPA CBA on the effective date of United's POR, "other than with respect to the [Pilot] Plan if the [Pilot] Plan is terminated."

---

[1] On March 31, 2006, the Seventh Circuit Court of Appeals affirmed the Bankruptcy Court's order approving the ALPA Agreement. See In re UAL, 443 F.3d 565 (7th Cir. 2006).

3

On September 27, 2005, the Bankruptcy Court ruled (with a written opinion to follow) that the PBGC had met its burden of showing that the Pilot Plan should be terminated under ERISA Section 4042, retroactive to December 30, 2004. On October 26, 2005, the Bankruptcy Court issued its Memorandum of Decision. The Bankruptcy Court held that the PBGC deomstrated that continued operation of the Pilot Plan beyond December 30, 2004, would result in an unreasonable increase in the PBGC's liability of its fund; therefore, the PBGC was entitled to a decree terminating the Pilot Plan pursuant to 29 U.S.C. § 1342(c) as of December 30, 2004. On October 28, 2005, the Bankruptcy Court entered its order terminating the Pilot Plan retroactive to December 30, 2004. United has not paid any non-qualified benefits to retired pilots since the Bankruptcy Court entered its October 28 Order. The ALPA, the URPBPA, and the PBGC appealed the Bankruptcy Court's October 28, 2005 Order.

On January 20, 2006, the Bankruptcy Court entered an order confirming United's Second Amended POR. Consistent with the ALPA Agreement, the POR called for the assumption of the ALPA CBA with the following provision:

> Each Collective Bargaining Agreement to which any Debtor is a party, as modified and/or amended from time to time, including by and through the Section 1113 Restructuring Agreements, shall be deemed automatically assumed in accordance with the provisions and requirements of Section 365 and 1123 of the Bankruptcy Code as of the Effective Date; provided, however, nothing in this Article VII.F.1 or otherwise in the Plan shall be deemed an assumption of any pension plan, retirement plan, savings plan, health plan, or other employee benefit plan discontinued or terminated during the Chapter 11 Cases.

On February 1, 2006, United's POR went effective, United exited bankruptcy, and United began implementing the terms of the POR.

4

On February 2, 2006, this Court reversed the Bankruptcy Court's October 28 Order, finding that the Bankruptcy Court lacked "core" jurisdiction over the PBGC's Section 4042 proceeding. The proceedings were remanded back to the Bankruptcy Court for the Bankruptcy Court to submit proposed findings of fact and conclusions of law to the District Court Judge that had referred the case, Judge Lefkow. On February 13, 2006, the Bankruptcy Court submitted to the District Court its proposed findings of fact and conclusions of law that the Pilot Plan should be terminated with a December 30, 2005 termination date. On February 24, 2006, this Court dismissed United's appeal of the Bankruptcy Court's October 6, 2005 Order for lack of ripeness due to this Court's February 2, 2006 decision reversing the Bankruptcy Court's October 28 Order.

Subsequently, the URPBPA and the ALPA filed motions to compel in the Bankruptcy Court, seeking to compel United to continue paying the non-qualified benefits to the retired pilots. On March 17, 2006, the Bankruptcy Court read an oral ruling into the record, granting in part and denying in part the motions to compel. The Bankruptcy Court's ruling, in part, included:

> Nothing in United's plan of reorganization assumed [the Pilot Plan]. To the contrary, the plan of reorganization provides in Article VII/F.1 that, "nothing in the plan shall be deemed an assumption of any pension plan discontinued or terminated during the Chapter 11 Cases." [The Pilot Plan] was, in fact, terminated during the Chapter 11 cases by order of this court, even though that termination was later reversed.... Thus, as of February 1, 2006, United was not [b]ound by the letter agreement to treat [the Pilot Plan] as in effect, and did not assume [the Pilot Plan] through its Chapter 11 plan.

However, the Bankruptcy Court also held that "United was obligated to make non-qualified pension benefit payments under [the Pilot Plan] through January 31, 2006.

5

On March 21, 2006, the Bankruptcy Court entered an Order consistent with the above oral ruling. Specifically, the March 21 Order provided that "United shall make payment of non-qualified benefits as described in the motions through January 31, 2006" and that "United has no obligation to pay non-qualified benefits after January 31, 2006." United, the URPBPA, and the ALPA each appealed the Bankruptcy Court's March 21 Order; and the Bankruptcy Court permitted United to escrow the funds necessary to pay the non-qualified benefits for November and December 2005 and January 2006.

On June 13, 2006, Judge Lefkow issued a written opinion and order adopting, as modified, the Bankruptcy Court's findings of fact and conclusions of law that the Pilot Plan should be terminated effective December 30, 2004. The URPBPA and the ALPA have appealed that order to the Seventh Circuit Court of Appeals.

## LEGAL STANDARD

A bankruptcy court's conclusions of law are reviewed *de novo*. *See In re Heartland Steel, Inc.*, 389 F.3d 741, 743-44 (7th Cir. 2004). The court reviews the bankruptcy court's factual findings for clear error. *Hoseman v. Weinschneider*, 322 F.3d 468, 473 (7th Cir. 2003).

## ANALYSIS

United raises one issue on appeal – whether the Bankruptcy Court erred when it ruled that United was obligated to pay non-qualified benefits for the months of November and December 2005 and January 2006. The URPBPA and the ALPA also raise one issue on appeal – whether the Bankruptcy Court erred in holding that United's obligation to make non-qualified payments ceased as of the POR's effective date.

6

The URPBPA and the ALPA argue that United has waived an argument that it is not required to pay non-qualified benefits for the months of November and December 2005 and January 2006 because it failed to appeal the February 2005 Order that required such payments and because it failed to raise the argument in objection to the URPBPA's and the ALAP's motions to compel.

Arguments and issues not raised in the lower court, or those arguments and issues raised in a conclusory or underdeveloped manner, are waived on appeal. *See Pond v. Michelin North America, Inc.*, 83 F.3d 592, 597 (7th Cir. 1999) (*Pond*). Arguments and issues not properly preserved for appeal are not reviewable regardless of the standard of review of the reviewing court. *See In re Kroner*, 953 F.2d 317, 319 (7th Cir. 1992) (*Kroner*).

In the instant case, the Bankruptcy Court held, in February 2005, that United was required to continue paying non-qualified benefits to retired pilots pending the termination of the Pilot Plan retroactive to December 30, 2004. United did not appeal this Order. Furthermore, after the URPBPA and the ALPA filed motions to compel seeking to compel United to continue paying non-qualified benefits to the retired benefits, United did not argue that it was not required to make the November and December 2005 and January 2006 payments. Accordingly, United has waived the issue of whether the Bankruptcy Court erred in requiring United to make the November and December 2005 and January 2006 non-qualified benefit payments.

The URPBPA and the ALPA argue that the Bankruptcy Court erred in holding that the Pilot Plan had been terminated because when the Bankruptcy Court issued its March 21, 2006 Order, no termination had occurred in light of the February 2, 2006 reversal of the Bankruptcy Court's grant of the PBGC's Complaint. The URPBPA and the ALPA claim the Bankruptcy Court's October 2005 Order was "void" after this Court's determination that the order did not arise from a core

proceeding. Therefore, they reason, the Bankruptcy Court did not then have jurisdiction to enter a final judgment. In its March 2006 ruling, the Bankruptcy Court rejected this argument that its previous ruling was void.

A judgment is void if the court that rendered the decision lacked jurisdiction over one of the parties or of the subject matter or if the court acted inconsistent with due process of law. *See United States v. Indoor Cultivation Equip. From High Tech Indoor Garden Supply*, 55 F.3d 1311, 1316 (7th Cir. 1995). A judgment may also be void if jurisdiction lies within the court and the court acted consistent with due process of law if the court enters a decree "not within the powers granted to it by the law." *Wilson v. Walker*, 109 U.S. 258, 166 (1883); *In re Crivello*, 134 F.3d 831, 838 (7th Cir. 1998) (*Crivello*). However, a judgment is not void just because it is erroneous. *Crivello*, 134 F.3d at 838.

Here, the Bankruptcy Court had jurisdiction over the parties and the subject matter and acted consistent with due process of law. The Bankruptcy Court erred in issuing a "final decision" because the proceeding was non-core. As a related, non-core proceeding, the Bankruptcy Court had the authority to submit proposed findings of fact and conclusions of law to the district court; and the district had the authority to issue a final order or judgment. *See* 28 U.S.C. § 157(c). Section 157(c)(1) provides that the bankruptcy court make "recommendations" to the district judge, not decisions. *Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir. 1989) (*Home Ins.*). The "relatedness" required for the bankruptcy court to hear the proceeding pursuant to Section 157(c) "is not enough to permit a bankruptcy judge to issue a decision binding unless reversed on appeal." *Home Ins.*, 889 F.2d at 749.

8

On March 21, 2006, when the Bankruptcy Court issued the Order in controversy, the Bankruptcy Court had issued its recommendation to the District Court; but the District Court had not yet issued a decision. Accordingly, on March 21, 2006, there was no decision or Order that was binding on the parties that terminated the Pilot Plan. *See Home Ins.*, 889 F.2d at 749. However, since that time, Judge Lefkow of the District Court has issued an Order that is binding on the parties, adopting, with slight modification, the Bankruptcy Court's recommendation. This Order of June 13, 2006, terminated the Pilot Plan effective December 30, 2004. As such, the Pilot Plan was terminated effective December 30, 2004, which was during the Chapter 11 proceedings as set forth in the POR. Therefore, the Bankruptcy Court's holding that the Pilot Plan was terminated during the Chapter 11 proceedings is affirmed. *See Disch v. Rasmussen*, 417 F.3d 769, 779 (7th Cir. 2005) (court may affirm lower court judgment on any ground supported by the record); *In re Winters*, 1999 WL 281083 (N.D. Ill. March 31, 1999) (affirming bankruptcy court on grounds supported by the underlying record).

The URPBPA and the ALPA also argue that the Bankruptcy Court erred because the Pilot Plan remains in effect because it was terminated in an ERISA Section 4042 involuntary proceeding, while Section 4(c) of the ALPA Agreement provides that the Pilot Plan is supposed to remain in effect until it is terminated in an ERISA Section 4041 voluntary termination. The URPBPA and the ALPA present this argument for the first time on appeal; accordingly, the argument has been waived. *See Pond*, 83 F.3d at 597; *Kroner*, 953 F.2d at 319.

Lastly, the ALPA argues that the Bankruptcy Court's decision should be reversed because it lacked jurisdiction to interpret the ALPA Agreement pursuant to the Railway Labor Act, which requires arbitration for the interpretation of the ALPA Agreement. The ALPA chose to file the

9

motion to compel before the Bankruptcy Court that is now at issue. The ALPA did not to seek to arbitrate the issue and did not argue that the Bankruptcy Court lacked jurisdiction to interpret the ALPA Agreement that it sought to compel to be enforced. Accordingly, the argument has been waived. *See Pond*, 83 F.3d at 597; *Kroner*, 953 F.2d at 319.

## CONCLUSION

Based on the foregoing, the March 16, 2006 Order of the Bankruptcy Court is affirmed.

Dated: August 30, 2006

John W. Darrah
United States District Court Judge